IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 3: 19-CR-50016 |
| V. | ) | Judge MATTHEW KENNELLY |
| | ) | |
| FLOYD BROWN, | ) | |
| Defendant. | ) | |

*MOTION TO QUASH TRIAL SUBPOENA FOR DRIANNA WRIGHT PURSUANT TO HER FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION*

Counsel for DRIANNA WRIGHT respectfully requests that this Honorable Court quash the government's trial subpoena, requiring Ms. Wright's testimony at the trial of Floyd Brown, on the ground that such testimony would violate Ms. Wright's privilege against self-incrimination. In support of this Motion, Ms. Wright, through counsel, states the following:

*PROCEDURAL HISTORY*

On the morning of March 7, 2019, Ms. Wright allegedly was in the hotel room with Floyd Brown when United States Marshals came to arrest Floyd Brown. The government alleges that the hotel room was rented in Ms. Wright's name and that she paid for the room on a weekly basis. Ms. Wright is also alleged to have suffered an injury during the attempt to arrest Floyd Brown and was treated for that injury at a local hospital in the late morning or early afternoon of March 7, 2019.

On March 7, 2019, Ms. Wright was interviewed by law enforcement without

1

the presence of an attorney. The interview was recorded and tendered to the defense as part of the discovery in the case. The interview also was tendered to Ms. Wright's counsel after she began representing Ms. Wright.

The FBI interviewed Ms. Wright again without counsel on March 18, 2019. Present for this interview were two FBI agents and two United States Attorneys. Ms. Wright was not advised of her rights to counsel or her right to remain silent prior to questioning on this day. She was asked to sign a consent to search her cell phone and she did without legal advice.

On March 19, 2019, Ms. Wright was questioned before a Grand Jury, again without having consulted with counsel. During questioning before the Grand Jury, Ms. Wright allegedly made admissions that could subject her to prosecution for federal offenses, including harboring a fugitive, obstruction of justice, and aiding and abetting among others.

On July 16, 2019, two FBI agents interviewed Ms. Wright again at an address in Springfield, Illinois. Ms. Wright did not have an attorney present for this interview, and she was not informed of her rights or asked to waive them. During this meeting the agents questioned Ms. Wright about information and messages found on the computer taken from the hotel room and from Ms. Wright's phone, asking her to initial certain of the photos. Agents asked about guns found in the car and in a duffel, taken from the hotel room. They also asked about a message she sent to Mr. Brown referring to the burglaries he committed for which the warrants had been issued. The agents questioned Ms. Wright about a series of angry e-mails

between her and Mr. Brown, in which they were alleged to have lobbed accusations of criminal conduct back and forth at each other.

Shortly after this meeting, Ms. Wright sought and obtained counsel, on July 18, 2019, for the purpose of responding to a Grand Jury subpoena, requiring her testimony on July 23, 2019. Counsel for Ms. Wright informed the government that Ms. Wright would assert her Fifth Amendment Privilege in response to questions, after which the government did not seek to have Ms. Wright testify again before the Grand Jury.

In February 2020, the government sought a proffer from Ms. Wright. Counsel for Ms. Wright asked about Ms. Wright's status with respect to the investigation. The government informed counsel that Ms. Wright was a subject of their investigation. Counsel then informed the government that without a grant of immunity from prosecution, Ms. Wright would not meet with or answer questions from the government. The government did not seek immunity for Ms. Wright and to date has not committed to a change in her "subject" status in their investigation and prosecution of Mr. Brown. Counsel for the government also has made clear that Ms. Wright has made inconsistent statements and that the government does not believe some of the statements she has made.

On Saturday, February 19, 2022, Ms. Wright contacted counsel because the FBI had served her with a trial subpoena for March 28, 2022. Counsel contacted the government and learned that they were seeking Ms. Wright's testimony at trial and had not decided whether they would seek a grant of immunity to secure her

testimony. Counsel maintains her original position that under the circumstances as counsel understands them it would not be in Ms. Wright's legal interest to meet with or answer questions from the government or its agents. Ms. Wright continues in the assertion of her Fifth Amendment Privilege against self-incrimination.

*LEGAL BASIS FOR ASSERTING THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF INCRIMINATION*

The Fifth Amendment to the United States Constitution provides, in relevant part, ""no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. 5. *Ohio v. Reiner*, 532 U.S. 17, 20 (2001). In order to claim the privilege, "[i]t need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." 341 U.S. at 486-487." *Ohio v. Reiner*, 532 U.S. 17, 20-21 (2001).

The Fifth Amendment's protection is "as broad as the mischief against which it seeks to guard," *Counselman* v. *Hitchcock*, 142 U.S. 547, 562 (1892). "The privilege is fulfilled only when a criminal defendant is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." **11***Malloy* v. *Hogan*, 378 U.S. 1, 8 (1964)." *Estelle v. Smith*, 451 U.S. 454, 467-68 (1981)

The privilege is not limited to answers that directly incriminate the witness. As the Supreme Court has held, "[t]he privilege against self-incrimination under the Federal Constitution's Fifth Amendment extends not only to answers that

4

would in themselves support a conviction, but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant; it need only be evident from the implications of the question, in the setting in which the question is asked, that a responsive answer to the question--or an explanation of why the question cannot be answered--might be dangerous because injurious disclosure could result." *Ohio v. Reiner*, 532 U.S. 17, 18 (2001)

When a witness asserts his Fifth Amendment privilege against self-incrimination, the court must determine whether a witness has a legitimate concern that providing an answer will incriminate the witness. *United States v. Kuh,* 541 F.2d 672, 674 (7th Cir. 1976) ("It is well settled that the Fifth Amendment privilege against self-incrimination must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer.") (internal quotation marks omitted). "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *In re High Fructose Corn Syrup Antitrust Litig.,* 295 F.3d 651, 663-64 (7th Cir. 2011). "Some nexus between the risk of criminal conviction and the information requested must exist." *Martin-Trigona v. Gouletas,* 634 F.2d 354, 360 (7th Cir. 1980). *United States v. Shalash*, No. 11 CR 0627, 2013 U.S. Dist. LEXIS 128626, at *20 (N.D. Ill. Sep. 10, 2013).

The Court has rejected arguments that an assertion of innocence deprives a person of the right to claim the privilege:

> we have never held …… that the privilege is unavailable to those who claim innocence. To the contrary, we have emphasized that one of the Fifth Amendment's "basic functions . . . is to protect *innocent* men . . . 'who otherwise might be ensnared by ambiguous circumstances.'" *Grunewald* v. *United States,* 353 U.S. 391, 421, 1 L. Ed. 2d 931, 77 S. Ct. 963 (1957) [citation omitted] In *Grunewald*, we recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth. 353 U.S. at 421-422.

*Ohio v. Reiner*, 532 U.S. 17, 21 (2001).

In this case, where Mr. Brown was wanted for the commission of crimes unrelated to charges in this case, where Ms. Wright allegedly was with him in the hotel when the charged offenses occurred, where the government believes that Ms. Wright's uncounseled statements to law inforcement are inconsistent and may be false, where Ms. Wright testified before a Grand Jury without legal representation, and where the government has made clear that it does not believe statements that Ms. Wright previously made, the answer to virtually any question posed to Ms. Wright, other than a request to state her name, may expose her to legal jeopardy.

Ms. Wright may have exposure to charges such as: harboring a fugitive, obstruction of justice, lying to an FBI agent, perjury, aiding and abetting the commission of the charged offenses, conspiracy to commit the charged offenses, among others. Based on the government's expressed desire to question Ms. Wright about the firearms evidence in the case, she could also face exposure to firearms offenses, aiding and abetting a firearms offense, or

6

conspiracy to commit a firearms offense, depending on the nature of the questions and the responses. Finally, under circumstances such as the present where the government's belief about the truth and Ms. Wright's version of the truth do not correspond in some respects the potential for jeopardy in responding to the government's questions is particularly grave.

WHEREFORE, DRIANNA WRIGHT, through counsel, respectfully requests that this Honorable Court quash the subpoena for her trial testimony on the ground that Ms. Wright has a Fifth Amendment Privilege against self-incrimination that would be violated by requiring her to testify about her involvement or lack thereof in the conduct alleged in the indictment of Mr. Brown.

In the alternative, Ms. Wright requests a pre-trial hearing, outside the presence of the jury, at which the Court may determine that she has a valid claim to privilege and that she may assert the same and not be called to testify at trial.

DATE: March 9, 2022 Respectfully submitted,

By: s/Andréa E. Gambino
Attorney for Drianna Wright

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014
agambinolaw@gmail.com
andrea@gambinodefense.com

CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that sent notification of such filing to the following:

Talia Bucci, Esq.
Assistant United States Attorney

and I hereby certify that I have mailed by United State Postal Service, or hand-delivered the document to the following non-CM/ECF participants:

N/A.

DATE: March 9, 2022

Respectfully submitted,

By: s/Andréa E. Gambino
Attorney for Drianna Wright

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014